

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable W. O. Reed
Chairman of the Committee
of the Whole House
Austin, Texas

Dear Mr. Reed:        Opinion No. O-3302
                      Re:  Constitutionality
                           and enforceability
                           of House Bill 746.

        By your letter of March 17, 1941, you have re-
quested a ruling of this Department upon the constitu-
tionality and enforceability of House Bill 746 recently
introduced in the House of Representatives.

        To satisfy the requirements of the "due process"
clause of the Texas and Federal Constitution, a penal statute
such as House Bill 746 purports to be must define with cer-
tainty and definiteness the prohibited criminal offense.
International Harvester Co. v. Kentucky, 234 U. S. 216, 58
L. Ed. 1284; Ex parte Leslie, 223 S. W. 227, Ratcliff, v.
State, 289 S. W. 1072. The conduct condemned as criminal
must be plainly and specifically stated in order that
he who is affected may be advised in advance that his con-
templated actions are in violation of the law. The first
article of the Texas Penal Code declares:

        "The design of enacting this Code is to define
    in plain language every offense against the laws of
    this State, and affix to each offense its proper
    punishment."

Failing to meet these tests, a penal statute cannot form
the basis of a criminal prosecution.

        We have carefully examined each section of
House Bill 746 to determine whether or not, as now
drawn, it contains the necessary definiteness and cer-
tainty to render it valid and enforceable. We have

Hon. W. O. Reed - Page 2.

concluded it does not in those portions hereinafter
pointed out.

Section 1 of the Bill provides:

"Hereafter, when a dispute shall arise between
an employer and employees in an industry which is
essential to national defense, or where the em-
ployer is operating a hospital, public untility, or
a transportation system, before any strike shall be
engaged in or put into effect by such employees, or
before such employees shall be locked out by the
employer, a written notice shall be filed by such
employees or employer, as the case may be, with the
County Clerk of the county where the industry is
situated, as well as with the respective county
clerks of all other counties in which such industry
operates its business, if any, and the same is
affected by such dispute. Such notice by the em-
ployees shall state that it is the purpose of such
employees to enter upon a strike and state the
reasons and demands, and such notice by the employer
shall state that it is the purpose of such employer
to close his business and look out the employees and
give the reasons therefor. No such strike shall
be entered into, and no such lockout shall be made
effective, until after the lapse of not less than
sixty days from and after the filing of said notice
or notices with the County Clerk or County Clerks
as herein provided. Such notice when filed with the
County Clerk shall be posted by him in a public
place in the court house and shall be released to
the press.

"Any strike which may be called in violation
of this section shall be deemed to be an illegal
strike, and any lockout which shall be made in
violation of this section shall be deemed to be an
illegal lockout, and any person acting by himself,
or as a member of any group or organization, or
acting in concert with one or more other persons,
who shall knowingly grant any aid or assistance
to any person engaged in any such illegal strike,
or any such illegal lockout, shall be guilty of a
misdemeanor, and upon conviction thereof shall be

Hon. W. O. Reed - Page 3.

punished by a fine of not less than One Thousand
($1,000.00) Dollars, nor more than Five Thousand
($5,000.00) Dollars, and each day such aid or
assistance is continued shall constitute a separate
offense. The provisions of this section shall not
apply to employees of railroads or the management
of railroads who are under the jurisdiction of the
Federal Railway Labor Act."

As a condition precedent to the operation of Section
1 of the Bill, it is necessary that "a dispute shall arise
between an employer and employees". The term "dispute between
an employer and employees" is not defined. The Bill does not
provide that the dispute between the employer and employees
shall be a labor dispute concerned with working hours or con-
ditions or rates of pay, nor does the Bill specify the number
or proportion of employees who must be engaged in a dispute
with the employer in order to make the Bill operative. As the
Bill is now written a dispute between "employer and employees"
will conceivably exist within the meaning of the Act when an
employer of numerous employees becomes involved in a dispute
with a relatively small number of his employees concerning
a matter which may or may not have relation to working condi-
tions, hours, or rates of pay in the employer's business. On
the other hand, it can be plausibly argued that the Bill con-
templates that a dispute must exist between an employer and
all of his employees without exception. In these respects
Section 1 of House Bill 746, in our opinion, is too vague, gen-
eral and indefinite to be valid or enforceable.

The Bill by its terms is confined to industries
"essential to National Defense or where the employer is operating
a hospital, public utility, or a transportation system". No
definition is contained in the Bill as to what constitutes,
within the meaning of the Act, an industry essential to National
Defense. It requires no argument to demonstrate that there can
and possibly does exist a wide difference of opinion as to
which industries in Texas are or are not "essential" to National
Defense." Numerous industries in Texas are certainly performing
important parts in the National Defense Program but we believe
no judge, jury or layman can with exactness state the industries

Hon. W. O. Reed - Page 4.

in Texas which are "essential to National Defense". To give this Act the degree of certainty required of a penal statute, we believe the industries to which it applies must be more clearly defined.

Section 1 as quoted further provides for the "filing of written notice with the County Clerk by such employees or employer as the case may be" for a period of at least sixty days before any "strike" or "lockout" shall be made effective. The terms "strike" and "lockout" are not defined. The Bill does not state what is meant by the term "such employees or employer". Conflicting interpretations can logically be made of this provision of the Bill. It is possible the intent is that only those employees that are actively engaged in dispute with an employer are required to file the notice or it can as logically be contended that this provision is intended to require all employees who propose to strike to file notice thereof.

Section 1 in its final paragraph provides that any "strike called" or any "lockout made" in violation of Section 1 shall be deemed "an illegal strike" or an "illegal lockout". The principals who actually bring about and engage in the strike or lockout are not punished. Those who knowingly grant any aid or assistance to any person engaged in any such illegal strike or lockout are punished by the Bill which provides that they shall be guilty of a misdemeanor and upon conviction shall be fined not less than $1,000.00 nor more than $5,000.00 for each day such aid or assistance is continued.

It is settled by statute and decisions in this State that an act or omission cannot be punished unless the same is made a penal offense and a penalty is affixed thereto by statute. Article 3 of the Penal Code provides:

". . .It is declared that no person shall be punished for any act or omission unless the same is made a penal offense and a penalty is affixed thereto by the written law of this State."

See, also, Hall v. State, 188 S. W. 1002, State v. Garcia, 28 Tex. 543.

It has been uniformly held that laws, to be valid, must require the same treatment of all who are in like circumstances and conditions. Ratcliff v. State, 289 S. W. 1072, Yck Wo v. Hopkins, 118 U. S. 356, 30 L. Ed. 220; Connally v. Union Sewer Public Service Co., 184 U. S. 540, 46 L. Ed. 679. We believe Section 1 of House Bill 746 is void and unenforceable, as now drawn, because it leaves unpunished the principals in a strike or lockout while providing severe punishment for those who only aid and assist the principals. Furthermore, the character of aid or assistance to an employee or employer necessary to constitute a violation of the Act is nowhere defined and is not definitely stated in the Bill. It is not provided that the aid or assistance shall be in aid of the prohibited strike or lockout but apparently any aid or assistance to an offending employer or employee, whether or not it bears any relation to the strike or lockout, is declared to be unlawful. In this respect we believe Section 1 fails to define with sufficient certainty and definiteness any punishable crime and, as drawn, is unenforceable.

Section 2 provides:

"In all cases where disputes exist between employers and employees, it shall be unlawful to have more than two (2) persons on picket duty at any entrance to a place or building where a labor difficulty exists. Any person guilty of violating this section, or any person or organization guilty of abetting or aiding others to violate this section, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than One Hundred ($100.00) Dollars, nor more than One Thousand ($1,000.00) Dollars, and each day such violation of this section shall continue shall constitute a separate offense."

It is observed that Section 2 by its terms is not expressly limited to industries essential to National Defense or to hospitals, public utilities and transportation systems. An examination of the Bill as a whole including its caption does not entirely remove doubt as to industries intended to

be covered in Section 2. The meaning of the terms "labor difficulties" or "disputes between employers and employees" is not defined. It is not clear whether the Bill intends to make crominal the act of peaceful picketing by all persons in excess of two, or whether the Bill is directed solely at the organization or person who supplies pickets in excess of two in number. If the Bill intends to make criminal the act of picketing by all except two employees, which two employees may legally picket? If three pickets are present, which one is guilty? House Bill 746 does not provide the answer. Or if Section 2 is directed solely at the organization furnishing the pickets, what is the result if more than one organization undertakes to supply pickets? May each organization supply two pickets, or if a total of only two pickets are permitted regardless of the number of organizations, which organization is permitted the privilege of having two pickets, and to which organization is that privilege denied? The Bill does not say.

The right of a person to picket in a peaceful manner a business establishment at which he is or was formerly employed has recently been reannounced by the United States Supreme Court in three cases. American Federation of Labor v. Swing, 85 L. Ed. 513, Milkman Drivers Union v. Meadowmoor Dairies, 85 L. Ed. 497, and Thornhill v. Alabama, 310 U. S. 88, 84 L. Ed. 1093. In the first cited case, the Supreme Court had before it the question of the constitutionality of an injunction decree of an Illinois Court which in effect restrained the members of a labor union from peacefully picketing an employer's establishment. The Court in holding the injunction invalid as violative of the freedom of speech and due process clauses of the Constitution said:

"We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

"Such a ban of free communication is inconsistent with the guaranty of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those

limits be defined by statute or by the judicial organ
of the state. . . Communication by such employees
of the facts of a dispute, deemed by them to be rele-
vant to their interests, can no more be barred because
of concern for the economic interests against which
they are seeking to enlist public opinion than could
the utterance protected in Thornhill's Case. 'Members
of a union might, without special statutory authoriza-
tion by a State, make known the facts of a labor dispute,
for freedom of speech is guaranteed by the Federal
Constitution.' Senn v. Tile Layers Protective Union,
301 US 468, 478, 81 L. Ed. 1229, 1236, 57 S. Ct. 857."

The Meadowmoor and Thornhill decisions, supra, are to
the same effect. That is, they affirm the rule to be that a
statute or court decree which operates to deprive an employee of
the right peacefully to picket his employer's place of business
is unconstitutional. To the same effect, see also Ex parte
Tucker, 220 S. W. 75; Peoples v. Harris, 91 Pac. (2) 989 and
American Federation of Labor et al v. Bain, 106 Pac. (2) 544.

In the light of these decisions by the United States
Supreme Court, we have no hesitancy in saying that insofar
as House Bill 746 operates to deprive employees of their right
peacefully to picket the place of business of their employer,
it is unconstitutional. It is unnecessary to discuss in this
opinion the constitutionality of a statute which does not
abolish but simply regulates reasonably the exercise of the
right to picket peacefully because House Bill 746, as now
drawn, appears to prohibit entirely the exercise of the right
of picketing to all employees but two. As to those employees,
other than the permitted two, the Bill would operate to wholly
deprive them of the right to picket peacefully.

Section 3 provides as follows:

"It shall be unlawful for any person by the use
of force or violence, or threat of the use of force
or violence, to attempt to prevent any person from
engaging in any lawful vocation within this State.
Any person guilty of violating this section shall be
deemed guilty of a felony, and upon conviction
thereof shall be punished by confinement in the State
Penitentiary for not less than one (1) year, nor
more than two (2) years."

Hon. W. O. Reed - Page 8.

In our opinion, Section 3 is constitutional and valid. The power of the Legislature to prohibit the use of force or violence, or the threat thereof, by any person in an attempt to prevent any other person from engaging in a lawful vocation has long been recognized. Milk Wagon Drivers Union v. Meadowmoor Dairies, 85 L. Ed. 497. You are accordingly advised that, in our opinion, Section 3 of House Bill 746 is valid, enforceable and constitutional.

Section 4 provides:

"It shall be unlawful for any person acting in concert with one or more other persons, to assemble at or near any place where a labor difficulty exists, and attempt by force or violence to prevent any person from engaging in any lawful vocation, or for any person acting either by himself, or as a member of any group or organization or acting in concert with one or more other persons, to promote, encourage or aid any such unlawful assemblage. Any person guilty of violating this section shall be deemed guilty of a felony, and upon conviction thereof shall be punished by confinement in the State Penitentiary for not less than one (1) year, nor more than two (2) years."

As in Section 2 of the Act, the term "labor difficulty" is not defined. If this term should be defined so that no reasonable question remains as to its meaning, we believe Section 4 will be constitutional and valid. The constitutional right of free assembly is not denied by Section 4 because the act there prohibited is not alone the "assembling" but an assembly combined with an attempt by force or violence to prevent any person from engaging in a lawful vocation.

Should Sections 1, 2 and 4 of the Bill be amended so as to satisfy the requirements of certainty and definiteness they now lack and to satisfy the separate constitutional objections set forth in this opinion with respect to Section 2, the question will then remain as to the constitutionality of the provision of Section 1 in which a strike or lockout is declared illegal unless 60 days advance notice thereof is filed with the County Clerk. As we construe your letter, you

Hon. W. O. Reed - Page 9.

desire our opinion on all constitutional questions raised by the substance of the Bill.

It is our opinion that the Legislature is without constitutional authority, by simply requiring the giving of a 60 day notice as a prerequisite to the legality of a strike or lockout, to suspend the legal right of employees, for just cause, to quit their employment singly or in groups, or the legal right of an employer, for just cause, to close his business and lock out his employees.

In Sheehan v. Levy, 215 S. W. 229, affirmed 238 S. W. 900, the Dallas Court of Civil Appeals in holding that the members of a labor union could not be enjoined from leaving the employment of plaintiff said:

"The rights of individuals to form labor organizations for the protection of the interest of the laboring classes have been uniformly upheld, and with equal unanimity the courts have denied the power to enjoin the members of such organizations from withdrawing either singly or in a body. But combinations usually termed 'boycott', formed for the purpose of interfering otherwise than by lawful competition 'with the business affairs of others, and depriving them, by means of threats and intimidation, of the right to conduct the business in which they happen to be engaged, according to the distates of their own judgment,' have been very generally condemned. The combination here shown cannot fairly be termed a boycott, but is in the nature of a strike; and since the weight of authority is to the effect that organized labor's right of compulsion or coercion by strikes, or withholding of labor or threats thereof, is limited to strikes or withholding of labor or threats thereof, against persons with whom the combination has a trade dispute, the doctrine of the boycott cases does not apply."

In Wolff Packing Co. v. Court of Industrial Relations, 267 U. S. 552, where it was sought to enforce a state statute

Hon. W. O. Reed - Page 10.

providing for compulsory arbitration of labor disputes by a
state agency, the Court said:

> "The system of compulsory arbitration which
> the Act establishes is intended to compel, and if
> sustained will compel, the owner and employees to
> continue the business on terms which are not of
> their making. It will constrain them not merely
> to respect the terms if they continue the business,
> but will constrain them to continue the business
> on those terms. True, the terms have some qualifi-
> cations are rather illusory and do not subtract much
> from the duty imposed. Such a system infringes the
> liberty of contract and rights of property guaranteed
> by the due process of law clause of the Fourteenth
> Amendment. 'The established doctrine is that this
> liberty may not be interfered with, under the guise
> of protecting the public interest, by legislative
> action which is arbitrary or without reasonable rela-
> tion to some purpose within the competency of the
> State to effect.'"

Other decisions are summed up in 31 American Juris-
prudence, 930 in this language:

> "It has been declared that workmen not bound
> by contract may quit their employment in a body
> with or without cause, and that they have the same
> right to quit without cause as the employer has to
> discharge them without cause". . ."According to
> many courts, the legality of a strike is dependent
> upon its purpose, upon the object to be accomplished."

House Bill 746 makes no distinction between strikes
or lockouts occasioned by just causes and those entered into
with improper motives or without just cause. Notwithstanding
these considerations, House Bill 746 proposes to force em-
ployees and employers, through threat of criminal prosecution,
to refrain from severing their connections although neither
employer nor employee is bound by contract to continue the
employment and although the refusal to continue the employment
may be caused by worthwhile and legal motives. No fact finding
body is provided for in the Bill to investigate the facts to

Hon. W. O. Reed - Page 11.

the end of determining whether the strike or lockout is justified or unreasonable. No arbitration procedure is set up by the statute to operate during the 60 day period of enforced employment, but it is simply provided by the Bill that the employment shall be continued or criminal prosecution shall be risked.

In recent decisions the Supreme Court of Texas struck down as unconstitutional the "moratorium" statutes which provided for an eleven months postponement of the right by creditors to foreclose upon real estate mortgages. Travelers' Insurance Co. v. Marshall, 76 S. W. (2) 1008 and Langever v. Miller, 76 S. W. (2) 1025. This language was used by the Court:

"Necessity that is higher than the Constitution can safely have no place in American jurisprudence. That principle is necessarily vicious in its tendency, and subversive of the Constitution. It should be, and is, limited by the constitutional inhibitions. * * *The Constitution, and a controlling necessity antagonistic to its requirements, cannot exist."

In view of the above cited opinions, we must advise you that in our opinion House Bill 746 insofar as it proposes arbitrarily to postpone for 60 days the rights of employees to quit their employment and the rights of employers to close their businesses to employees violates the due process and contract clauses of the Texas and United States Constitutions.

This opinion is strictly limited to House Bill 746 as it is now drawn.

We do not hold in this opinion that the Legislature of Texas is without constitutional authority to enact a law reasonably regulating the right of employees to strike or the right of employer to lockout employees pending investigation

Hon. W. O. Reed - Page 12.

of the facts by an impartial agency and while efforts are being made to mediate labor disputes. Such a bill is not before us and we express no opinion thereon.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Robert E. Kepke*

Robert E. Kepke
Assistant

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE

REK:BT

APPROVED MAR 21, 1941

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS